1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH PRESTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case  No. EDCV 10-00472 AJW** |
| | ) | |
| **v.** | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [JS 2]. In a November 4, 2009 hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") found that plaintiff had a severe mood disorder, but that his residual functional capacity ("RFC") did not preclude him from performing work available in significant numbers in the national economy.

1  Therefore, the ALJ found plaintiff not disabled at any time after April 1, 2008.[1] [Administrative Record

2  ("AR") 20].

3  **Standard of Review**

4  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

5  evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

6  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than

7  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

8  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

9  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

10  required to review the record as a whole and to consider evidence detracting from the decision as well as

11  evidence supporting the decision.  Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

12  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

13  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

14  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th

15  Cir.1999)).

16  **Duty to develop the record**

17  Plaintiff contends that the ALJ erred in failing adequately to develop the record because plaintiff was

18  not represented by counsel during the hearing, and the ALJ failed to obtain plaintiff's treating source

19  records. [AR 3-12].

20  The ALJ is not "'a mere umpire' during disability proceedings. Rather, the ALJ has 'a

21  special duty to fully and fairly develop the record and to assure that the claimant's interests are

22  considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006)(quoting Higbee v.

23  ────────────────

24  [1]  Plaintiff formerly received child's SSI benefits for a mental disability. His
eligibility for those benefits was redetermined by law when he attained the age of 18, and

25  he was found no longer disabled under the disability standard applicable to adults.
Plaintiff also applied for disabled adult child's insurance benefits, which are available to

26  a child of an individual who is entitled to old age or disability insurance benefits if the

27  child is under a disability, as defined by the Social Security Act, and the disability began
before the child's 22nd birthday. See 42 U.S.C. § 402(d).  That application also was denied

28  on the ground that plaintiff was no longer disabled as of April 1, 2008. [See AR 12].

1 | Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per curiam) and Brown v. Heckler, 713 F.2d 441,

2 | 443 (9th Cir.1983)). When a claimant is not represented by counsel, "it is incumbent upon the

3 | ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.

4 | The ALJ must be especially diligent in ensuring that favorable as well as unfavorable facts and

5 | circumstances are elicited." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)(quoting Cox

6 | v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). The ALJ's duty to develop the record is

7 | heightened when a claimant's ability to protect his interests is affected by a mental impairment.

8 | Higbee, 975 F.2d at 561-562; Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

9 | "When 'the heavy burden imposed by Cox' is not met, and the claimant may have been

10 | prejudiced, 'the interests of justice demand that the case be remanded.'" Higbee, 975 F.2d at

11 | 561 (quoting Vidal, 637 F.2d at 714-715 and citing Thompson v. Schweiker, 665 F.2d 936,

12 | 941 (9th Cir.1982); Cruz v. Schweiker, 645 F.2d 812, 814 (9th Cir.1981); and Cox, 587 F.2d

13 | at 991).

14 |      Plaintiff appeared for the hearing without a representative, and both he and his father testified. The

15 | ALJ engaged in a colloquy with plaintiff regarding the issues to be decided and plaintiff's right to

16 | representation. The ALJ explained that there were two cases before him with the same set of facts, one

17 | involving childhood benefits, and the other involving "adult benefits as a child from your father's account."

18 | [AR 23]. The ALJ told plaintiff that he had "been sent some notices in the mail," and asked, "[h]as your

19 | dad let you read any of them?" [AR 23]. Plaintiff said that he "didn't know he was getting" any notices,

20 | and had seen his father's name on notices received in the mail, but not his own name. [AR 23-24]. Asked

21 | by the ALJ whether he understood that he had a right to be represented in connection with the hearing,

22 | plaintiff answered, "No." [AR 24]. Plaintiff also answered "no" when asked if he understood how to obtain

23 | a representative. [AR 24]. The ALJ proceeded to explain plaintiff's right to be represented by an attorney

24 | or a non-attorney representative during the hearing. [AR 24]. The ALJ asked plaintiff if he wanted to

25 | proceed with the hearing or contact a representative, and plaintiff said that he wished to proceed. The ALJ

26 | told plaintiff that he could "always appeal" an adverse decision and "get a representative at that time." [AR

27 | 25]. Plaintiff said that he understood. [AR 25].

28 |      In response to questions by the ALJ about his treatment, plaintiff testified that he was taking

Seroquel and another medication whose name he could not remember. [AR 27]. He said that he previously had refused to take his medication for about three weeks because it made him twitch and feel sick, and he did not like taking it. [AR 28-29]. Plaintiff said that he saw the doctor once a month for medications, and that he also had "a therapist and a psychologist." [AR 29]. He had not seen the therapist for "about a month" and believed he had missed an appointment. [AR 29].

Plaintiff said that he received his high-school diploma in 2008 and was taking a "water treatment program" class but did not like it. [AR 27, 30]. He had been "working for a school program in a cafeteria" but was "kicked out" for not listening to his work assignments and talking on his cell phone. [AR 26]. Plaintiff said that he did not think he could work but he did not know why. [AR 27].

The ALJ told plaintiff that he had the report issued in plaintiff's case by a disability hearing officer [see AR 61-64], and asked plaintiff if he remembered appearing before her. Plaintiff said that he did not. [AR 30].

Walter Preston told the ALJ "we just received the [hearing] notice 10 days before" and "didn't have sufficient time to obtain the additional records [from] when [plaintiff] was a juvenile and . . . ." [AR 31]. The ALJ replied, "I already have those . . . We have his old file here. . . . You didn't get here early enough to look at the file, but the file is here." [AR 30]. The ALJ said that the file included documents from San Bernardino Unified School District, Aurora Charter Oaks Hospital, Dr. Linda Smith, and childhood disability records back to 2004. [AR 32; see AR 2].

Mr. Preston testified as follows. Plaintiff could not work because the medications did not allow him to focus or function in a work environment. Plaintiff was taking Seroquel, Depakote, Risperdal, and Fluoxetine, and was supposed to be taking Zyprexa also. [AR 33-34]. Plaintiff had been on Seroquel for a long time, but some of his other medications were fairly new. All of them had been prescribed by Dr. Nguyen. [AR 34-35]. Plaintiff had lived in group homes for a period of time and had been hospitalized. He had few daily activities, no friends, did not complete tasks, and had trouble sleeping. Plaintiff had been terminated from a prior job because of his "attitude" and failing to show up on time or follow commands. Plaintiff had been this way since he was young. He sometimes ran off for two or three days at a time. [AR 35-37]. Plaintiff's class was two days a week for two hours, but plaintiff was "not catching onto it." [AR 38]. Mr. Preston said that his son did not want to go to the doctor because he did not think he needed to,

but "I know he needs it." [AR 38].

The record contains no treatment records from Dr. Nguyen or the treating therapist or psychologist plaintiff mentioned during the hearing.  The only medical reports in the record concern plaintiff's psychiatric hospitalization at Aurora Charter Oaks Behavioral Health from December 2 through December 7, 2007. [AR 189-196]. Plaintiff was taken into custody by police and placed on a hold under California Welfare and Institutions Code section 5150 because he said that he wanted to kill himself and his father. [AR 189].  He was admitted, monitored, and given medication and psychotherapy.  Among other things, it was noted that plaintiff reportedly was "exposed to drugs in utero" and was premature at birth. [AR 193]. Plaintiff was discharged "to home accompanied by his father" with a referral for follow-up outpatient care. [AR 189-191].  His discharge diagnoses were impulse control disorder, not otherwise specified, rule out bipolar disorder. [AR 191].  He was not given any restrictions on physical activity. [AR 191].

In his hearing decision, the ALJ noted that plaintiff

alleges disability due to mental illness including schizophrenia and bipolar disorder. However, the objective medical evidence does not reveal either diagnosis. At the hearing, [plaintiff] stated that he has refused to take medication or go to mental health treatment.  He stated that his father is now making him take medications and see a therapist whom he had not seen in about a month." [AR 16].  The ALJ also said that plaintiff "has no current treating source for his alleged impairments. Therefore, a consultative psychiatric examination was performed . . . .

[AR 17].

The ALJ found that plaintiff retained the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple and semi-skilled jobs in a nonpublic setting.  He has mild limitation getting along with others including supervisors and co-workers." [AR 16].  In making that finding, the ALJ said that he gave "greatest weight" to the opinion of the nonexamining state agency psychiatrist, and he also relied on the "not inconsistent" opinion of the consultative examining psychiatrist.  [AR 17-18, 197-203, 207-218].

In failing to obtain–or at least attempting to obtain—plaintiff's current treating source records, the ALJ breached his duty to fully and fairly develop the record.  The ALJ's statement

that plaintiff had "no current treating source" for his mental impairments is contrary to the unambiguous testimony of plaintiff and his father that plaintiff was, and had been, seeing Dr. Nguyen for medication and a therapist or psychologist for counseling.  The ALJ cited the absence of treating source records as a reason for ordering a consultative psychiatric examination, but there is no indication that he made any attempt to obtain the missing treatment records, either by initiating a request himself or by advising plaintiff to submit them after the hearing.  The treating source evidence obviously might have been more favorable to plaintiff than the nonexamining and examining physicians' reports.  For example, the ALJ noted that the objective medical evidence did not contain any diagnoses of schizophrenia or bipolar disorder. [AR 16].  However, the only treating source evidence in the file, plaintiff's December 2007 hospital records, contained significant clinical findings and a "rule out bipolar disorder" diagnosis, with a referral for outpatient treatment. [AR 187-196]. The missing treating source records may include those diagnoses or other relevant diagnostic and clinical findings.  At a minimum, obtaining the treating source records would ensure that the record was complete and that the ALJ was not giving undue weight to nontreating source evidence.

The ALJ also mischaracterized the evidence (and minimized the significance of the missing records) when he said that plaintiff testified that he had refused to take medication or receive mental health treatment.  Plaintiff said that he temporarily stopped taking his medication for about three weeks, and he was seeing Dr. Nguyen about once a month.  He said that had not seen his therapist for about a month, possibly because of a missed appointment, but he did not indicate that he had discontinued therapy.   [See AR 27-29].  Plaintiff's testimony that his father made him go to the doctor does not mean that the treatment plaintiff received was unnecessary.

In the circumstances of this case, the ALJ should have taken extra care to ensure that the record was fully and fairly developed. "The duty to provide an adequate record is of extraordinary importance when a person once found eligible for S.S.I. benefits may be in danger of losing them because he is too ill to act in his own best interests." Higbee, 975 F.2d at 562; see Delorme, 924 F.2d at 849 (stating that the ALJ has a "basic duty to 'inform himself about

1  facts relevant to his decision,'" and that "[i]n cases of mental impairments, this duty is

2  especially important") (quoting Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987)).

3       Plaintiff was not represented by counsel.  He had previously been found mentally

4  disabled, and he alleged continuing mental disability.  The ALJ found that plaintiff had a

5  mental impairment that was at least severe.  Furthermore, plaintiff testified that he was unaware of

6  receiving notices regarding his case, did not understand his right to representation during the hearing, did

7  not know how to contact a potential representative, and did not remember the prior hearing before a

8  disability officer. Plaintiff's father may have been acting as plaintiff's de facto representative, but the ALJ

9  did not make similar inquiries of Mr. Preston to ensure that he was adequately protecting his son's interests.

10  Moreover, Mr. Preston testified that he had only received the hearing notice 10 days earlier, and he indicated

11  that was not familiar with the contents of plaintiff's file until the ALJ summarized the exhibits.

12       Under these circumstances, the ALJ had a heightened obligation to ensure the adequacy of the

13  record. In failing to do, the ALJ committed reversible legal error. The appropriate remedy is a remand for

14  further administrative proceedings so that the ALJ may conduct a new hearing and take such other action

15  as is necessary to develop the record.  See Higbee, 975 F.2d at 563.

16                                              **Conclusion**

17       The Commissioner's decision is not supported by substantial evidence and is not free of legal error.

18  Accordingly, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for

19  further administrative proceedings consistent with this memorandum of decision.

20  **IT IS SO ORDERED.**

21  December 16, 2010

22

23

24                    _____

                      ANDREW J. WISTRICH
25                    United States Magistrate Judge

26

27

28

7